STATE OF NEW HAMPSHIRE                                    COUNTY OF MERRIMACK

FILED - USDC -NH
2022 JUN 30 AM 11:36

AFFIDAVIT OF DAVID MARTINKO

I, David M. Martinko, DOB 10/11/1974, attest to the following as true and accurate statements.

1. I am a prisoner at the NH State Prison for Men in Concord, where I have been since 2013.

2. In 2016 I converted to Messianic Judaism and was placed on the religious no-pork diet. In doing so, I agreed to not order pork from canteen and the special food programs. I was told the prison would provide me with pork-free meals.

3. The chaplain has stated that he has communicated religious dietary restrictions to the kitchen: in addition to no pork, shellfish and gelatin are also prohibited, and during Passover leavening is not permitted. He stated that these are not new rules, the kitchen has been preparing no-pork religious diets for many years. Despite this, I am repeatedly having to remind the kitchen of the rules—even having to tell a staff member that ham is pork.

4. My experience over the past five years is that the kitchen engages in a pattern of violating my religious diet. Their actions disrupt my ability to observe my religious belief, and at times those actions and their responses to my complaints seem deliberately aimed at punishing me.

5. In the beginning I ran into issues where I was served pork because the sign was not posted and, in my ignorance, I did not request my no-pork meal. I trusted the kitchen to inform me the meal contains pork by posting the no-pork sign: PLEASE ASK FOR PORK ALTERNATIVE.

6. Over time I learned that I have to ask for no-pork at every meal, and I often have to remind staff to post the sign when it does contain pork.

7. Despite my asking for no-pork, the kitchen still serves me food items that violate my diet. In some cases I am able to spot the prohibited food item prior to consumption, but most times I only discover it after I have eaten it.

- 1 -

8. The kitchen's response to these violations typically include:
    (a) ask for no-pork;
    (b) ask the chef on duty if you are unsure; and
    (c) write the kitchen.
9. Those solutions do not address the problems because:
    (a) I do ask for no-pork;
    (b) the chef on duty admits to not knowing; and
    (c) I cannot wait a week or more for a response so I can eat food I cannot store for that long.
10. When I have written the kitchen to find out if there is pork in a particular meal, I am told they do not track soups. Sometimes their response indicates their answer is based on checking labels on boxes days after the food was prepared and its packaging discarded. What is on a shelf may not accurately portray what was used. They also rely on what they "ordered" from the warehouse, which is not always what is delivered.
11. In one instance were jello was added to a cake, the inmate cook indicated there are two boxes of jello in the stockroom and one was marked Kosher, but he doesn't know which he used.
12. To some of my complaints, the kitchen has stated that some of the pork-free food items look similar to the pork ones. Yet, when I ask the chef if there is pork in the soup, she stirs it and says, "It doesn't look like it. It should be fine."
13. <u>Alexander v. Azar</u>, 2020 US Dist LEXIS 50636 ("Should is not mandatory language.") "Should" is not suitable for a religious mandate that an adherent <u>shall</u> not eat pork. See also <u>Mirkin v. Xoom Energy, LLC</u>, 342 F. Supp. 3d at 326.
14. Staff not knowing if the meal is appropriate for my diet has led to me having severe anxiety.
    (a) Staff admits to not knowing if there is pork in the meal.
        (i) I rely on staff (as my custodian) to provide me proper nutrition that complies with my religious needs.

- 2 -

      (ii) I have to repeatedly inform staff: ham is pork; seafood salad has crab juice; jello and marshmallow contain gelatin; bread crumbs come from bread (which has yeast); and baking soda and baking powder are leavening agents.

  (b) Staff flip-flops as to whether a food item contains pork.

      (i) Someone ahead of me will ask for no-pork and get served the vegetarian meal and I will get the regular meal, creating confusion.

      (ii) The chef will tell me the meal is not pork, then after I sit down he posts the no-pork sign, creating confusion.

      (iii) I received a sandwich for my no-pork alternative—the same food item I was told was pork the previous day, creating confusion.

      (iv) Lunch soups are typically made from the previous day's dinner. The lunch chef is often at odds with the dinner chef as to whether the dinner-turned-soup contains pork, creating confusion.

15. Another issue is cross-contamination, violations of basic food safety and handling.

  (a) Cross-contamination occurs when a prohibited food comes in contact with food intended for a special diet. I have witnessed:

      (i) someone handling pork and then touching a food intended for my special diet;

      (ii) pork foods being ladled over top of special diet food where the pork food drips into the dish below.

  (b) Once a food is contaminated, it cannot be served to the special diet. I have witnessed:

      (i) a special diet food item be placed on a tray with pork and then returned to the pan, contaminating all the other food in that pan.

16. It is unacceptable that this cross-contamination should occur in a food establishment, but it is made worse by the fact that these events are perpetrated by the kitchen chefs and supervisors themselves.

17. I do not work in the kitchen so I cannot properly witness their processes to diagnose where things are going wrong. I can't be sure whether their actions are intentional, form a general lack of desire to care, or are a result of lapses in education and training.

18. I have recommended solutions to prevent cross-contamination such as packaging the no-pork lunch meat. I have suggested the removal of staff who are a major source of my diet violations. And I have suggested alternative meals for Passover that the kitchen has demonstrated it can make.

19. Throughout my more than five years of complaining, I have sought the assistance of Chaplain Daly. He assures me the kitchen has been providing a no-pork diet for many years and that they are aware of the dietary restrictions. He also states that he has no authority over the kitchen and what they do.

20. The kitchen has dismissed many of my complaints but the staff who respond were not present to witness the event. Often my complaints are:
    (a) not addressed;
    (b) dismissed, citing staff follow proper protocols;
    (c) dismissed as false claims.

21. A staff member threatened disciplinary action over what he referred to as false claims and then intercepted my attempt to get corroboration from the staff involved.

22. In 2021 I suffered a severe anxiety attack. While trying to observe Passover, I kept getting inappropriate trays from the kitchen. I was forced to wait while others were served and told there are no Passover trays. In one case they had the trays but they only contained a baggie of celery sticks. And though it was no fault of mine, I was kicked out of the chow line for holding things up.

23. I was an emotional wreck: anxious, easily irritated, angry, dejected, depressed, and sad. I didn't want to go back to the chow hall just to be persecuted again, but it is my only option to eat. Being irratable, I didn't want to be around others. I constantly worried that I would get into a fight with anyone over the littlest of things (which is completely out of character for me). I was mad over the treatment I was receiving—the non-responses and dismissive responses to my complaints. I felt attacked. I was dejected because none of my efforts to improve my situation were working. I was depressed as I considered accepting that this was simply how things were going to be. And I was sad as I considered abandoning my religious conviction to not eat pork, giving in to the pressure.

24. I was a powder keg of emotion, in danger of exploding, so I went to Mental Health for an emergency visit. There, the counselor listened as I recalled all of my experiences with my diet and the emotions I was feeling. At each of her suggestions to resolve my issues, I replied, "I tried that."

25. I visited Mental Health Sick Call several times in the following weeks. The anxiety was persistent and I needed help learning to cope, but I was told this was a Chapel/Kitchen problem. The counselor also suggested I avoid the chow hall and eat canteen. I requested to be put on cell feeds since I cannot afford to buy all my own meals, but once again I was pushed to talk to the chaplain.

26. My rights are being violated, interfering with my ability to exercise my religious beliefs and I am being denied mental health care.

Affiant, David M. Martinko, hereby swears that the foregoing statements are true to the best of his knowledge and belief under the penalty for perjury. Affiant says nothing further.

_David Martinko_ (signature)      6/15/22

David Martinko      Date

David Martinko, known to me or satisfactorily identified, appeared before me and gave his oath under the penalty for perjury that the foregoing affidavit is true and accurate to the best of his knowledge and belief.

_Nadine Barton_ (signature)      6/15/2022

Notary Public/Justice of the Peace      Date

My commission expires: 1/14/2024



Notary seal: NADINE X BARTON, STATE OF NEW HAMPSHIRE, NOTARY PUBLIC, MY COMMISSION EXPIRES JANUARY 14 2024

STATE OF NEW HAMPSHIRE                                    COUNTY OF MERRIMACK

## AFFIDAVIT OF DARRIN PARTLOW

I, Darrin W. Partlow, DOB 3-12-65, attest to the following as true and accurate statements.

1. I am a prisoner at the New Hampshire State Prison where I have worked in the kitchen for approximately eight years.

2. During my employment in the kitchen I have witnessed many instances of improper food handling, and am aware of many practices of improper food handling. Some of those which most directly involve the no-pork diet are related below.

3. On 1-7-22 my attention was drawn to several pieces of pork (ham) in the soup that was being prepared for the special diets. Though it is called the 'vegetarian soup', it is used for nearly all special diets, and not just vegetarians. On 1-7-22 the regular soup had left-over ham and potatoes from the previous days' meal. The vegetarian soup had the vegetarian alternative to the ham and potatoes meal, but pork had made its way into the soup as well.

4. The two soup cooks and I discovered that the left-overs saved for use in the soup had been mishandled. In one pan we found the vegetarian alternative had been layered over the ham and potatoes, concealling the pork. Further, we also saw that pans containing meat were placed above those that did not contain meat in a rack.

5. After discovering the source of the contamination in the soup, I spoke to Mr. Robert Heath, chef supervisor in the kitchen, and related the above issues to him. As the issues discovered on 1-7-22 were among many that I have brought to his attention, I also restated other concerns regarding the left-overs.

6. I requested that Mr. Heath direct that left-overs not be used for

.....AFFIDAVIT OF DARRIN PARTLOW, pg.2 .....

   the special diet soup since those diets require greater control
   than was being provided. Referring to the meat found in the soup
   that day and to other improper practices, I said that we cannot
   confidently serve the left-overs as suitable for the special diets.
   Mr. Heath responded that it didn't matter because "[the vegies]
   are all fakes anyway."

7. That evening of 1-7-22 I wrote a request slip, recapping the talk
   I had with Mr. Heath and again requesting that he cease using left-
   overs for the special diet soup. I submitted the slip the next
   day, and Mr. Heath responded verbally a week later. He informed
   me that improvements were being implemented, and that my slip had
   disappeared from his desk.

8. While some changes were implemented and I noted the results, in
   a few weeks those results disappeared and the old practices returned.

9. In the last year I have witnessed many instances where cross-contam-
   ination between pork and the non-pork alternative occurred at the
   preparation stage. One of the practices that leads to this contam-
   ination is in allowing the same person to slice and/or portion-out
   the meats for the meal. The person goes from handling pork to handling
   non-pork meat, and often then repeats those steps while portioning-
   out the food. This crossing between pork and non-pork is exacerbated
   by a failure to clean the work-area, equipment, or the workers'
   hands. Gloves, when used, too often do not get changed.

10. I have also witnessed cross-contamination of the no-pork diet with
    pork at the point where trays are made. The practice is to have

.....AFFIDAVIT OF DARRIN PARTLOW, pg.3 .....

the same person make the trays for all special-diet varieties. This is done without the care needed to prevent cross-contamination, as in not changing gloves, washing hands or cleaning the area and equipment. I have not witnessed anyone using the same utensil for both pork and non-pork foods without rinsing the utensil, but I have seen a utensil receive a quick rinse before being used for a different food.

11. I am providing this affidavit on the request of another prisoner, David Martinko, and with no small amount of trepidation over the proclivity of staff to retaliate over such actions. E.g., on 4-1-18 kitchen staff and security attempted to fire me from my job for telling them that the Kosher-diet meal contained non-kosher cheese.

Affiant, Darrin Partlow, hereby swears that the foregoing statements are true to the best of his knowledge and belief under the penalty for perjury. Affiant says nothing further.

_Darrin Partlow_ (signature)    4-13-22
Darrin Partlow                   date

Darrin Partlow, known to me or satisfactorily identified, appeared before me and gave his oath under the penalty for perjury that the foregoing affidavit is true and accurate to the best of his knowledge and belief.

_Nadine Barton_ (signature)    4/13/22
Notary Public/Justice of the Peace    Date
My commission expires: 1/14/24

[Notary seal: NADINE BARTON, STATE OF NEW HAMPSHIRE, MY COMMISSION EXPIRES JANUARY 14 2024, NOTARY PUBLIC]

STATE OF NEW HAMPSHIRE                           COUNTY OF MERRIMACK

### AFFIDAVIT OF SHANE VADNEY

I, Shane Vadney, DOB 9/17/1983, attest to the following as true and accurate statements.

1. I am a prisoner at the New Hampshire State Prison for Men in Concord where I work in the kitchen. My responsibilities there include preparing special diets, including: low-fiber, vegetarian, and no-pork.
2. While preparing the 2022 Superbowl Sunday no-pork meals for general population, we were instructed by kitchen staff to include General Mills Lucky Charm Cereal Bars as part of the meal. Robert Heath had assured that the cereal bars were in compliance with the no-pork diet.
3. On Superbowl Sunday while working in the kitchen, I was approached by Robert Heath who directed me to take two Nutra-grain cereal bars to inmate David Martinko. I was not instructed to provide replacement cereal bars to any of the other no-pork dieters and I am unaware of anyone else who was instructed to do the same.
4. I am providing this affidavit at the request of another inmate, David Martinko.

Affiant Shane Vadney hereby swears that the following statements are true to the best of his knowledge and belief under the penalty of perjury. Affiant says nothing further.

_____          6-15-22
Shane Vadney                            Date


Shane Vadney, known to me or satisfactorily identified, appeared before me and gave his oath under the penalty for perjury that the foregoing affidavit is true and accurate to the best of his knowledge and belief.

_____          6/15/2022
Notary Public/Justice of the Peace       Date
My commission expires: 1/14/2024

[Notary seal: NADINE BARTON, STATE OF NEW HAMPSHIRE, COMMISSION EXPIRES JANUARY 14 2024, NOTARY PUBLIC]

## AFFIDAVIT

State of New Hampshire
County of Merrimack

   Seth Bader, being duly sworn, deposes and says as follows.

(1) I am a New Hampshire State Prison inmate, and have been since 1998. For most of that time I have been housed at the Concord prison, and occasionally at the Berlin prison.

(2) I have been a kitchen worker at the Concord prison since January of 2018. For most of 2017, I had that same job at the Berlin prison.

(3) I am a lifelong Orthodox Jew. For that reason, I never knowingly eat pork.

(4) When a meal known to contain pork is served to the inmate population, kitchen staff display a red sign offering a no-pork alternative.

(5) As a kitchen worker, I have long had concerns that some meals served here, for example meatballs or deli meats, may contain pork unbeknownst to the kitchen staff. For that reason, I occasionally - perhaps once a week on the average - query kitchen staff as to whether a particular meal contains pork.

(6) In response to such queries, kitchen staff sometimes say that they do not know what ingredients are in a particular food product, and that I should find its package and read the label.

(7) Once food products are removed from their package and put in a container for cooking and service, there may be no way to

-1-

be certain if they contain pork.

(8) Leftover foods are sometimes kept in metal containers in a walk-in refrigerator for one or more days, and then used to make soup. When that happens, the original container has typically been in the garbage for days, and the precise contents of the leftovers are anyone's guess.

(9) I do not believe that any intentional pork/no-pork contamination occurs here. I do believe it could happen accidentally.

(10) I make this affidavit at the request of another prison inmate, David Martinko.

Further the affiant says not.

_____  feb 23, 2022
Seth Bader                Date

Now appeared before me Seth Bader, to me known or satisfactorily identified, and made his oath under the penalty for perjury that his foregoing affidavit is true to the best of his knowledge and belief.

_____  2/23/2022
Notary Public/           Date
Justice of the Peace


My commission expires:    SHARON G. NOLIN, Notary Public
   12/19/2023             State of New Hampshire
                          My Commission Expires Dec. 19, 2023

Affix seal:



-2-

# Declaration

Daniel Ayer #73914, being competant to make this declaration and having personal knowledge of the matters therein, declares pursuant to 28 U.S.C. § 1746:

1. The Kitchen staff are fully aware that I am allergic to onions and face a substantial Risk of serious harm, I had to grieve the Dietition to get a blood test after he diagnoised me as being non-tolerent to Onions. (Tim Popovich)(Dietition) I won the Grievance the Warden (Edmark)(Warden) ordered the test and the Results, I was allergic. The dietition placed me on the "No Onion" diet, however he minimizes my allergy to this day, even after several allergic reactions recorded in my medical records. Between the Dietition and #I and #II Chefs Heather Conock #I and Robert Heath #II etal, they intentionally disregard substantial Risk of serious harm by failing to take measures to abate it. They continue to serve me onions, on or about 5/1/22 Dinner I was served onions and went to the infirmary, On or about served me onions in the salad Dressing 9/23/21 had a very bad Allergic Reaction started Refusing Unmarked/Unsealed Trays. After many attemps to get the Kitchen etal. to mark and seal my trays they continued to refuse to mark and seal my trays until I changed my Religion and now I recieve marked and sealed trays every meal, but they etal. are still failing because I was served Onions 5/25/22 with my Kosher meal marked and sealed on or about.

2. I have been served onion after recieving "No Onion" Diet

Pg 1 of 2

On or about 4/11/20, 6/23/20, 6/26/20, 11/10/20, 11/13/20, 11/14/20, 6/18/21, 6/23/21, 12/24/21, 12/25/21, 5/1/22, 5/25/22.

3. Now I am refusing trays that are unexceptable like on Memorial Day the kitchen serves 2 Hamburgers, chips, Brownie Gatorade, Pasta salad, Hamburgers Grilled outside to celebrate with a Holiday meal, but they exculde Kosher Diets by giving them a regular meal and me they tried giving me Peanut Butter and Jelly Lunch walk thru I accepted, but Dinner I refuse telling them, the Chef serving and Robert Heath unacceptable, they gave me Peanutbutter and Jelly again. This would not be acceptable on a regular day, it was down right insulting, prejudice, and retaliation.

4. I have witnessed inmates with Diets return to the chef because they were missing items or serving them something out of thier Dietary limits on several occasions. The Chefs etal. are failing to take the proper fail safe precausions to prevent Diets from getting the wrong foods, and getting the right foods. I worked in that kitchen approx. 14 years and the Diet feed were alway check by the Chef before going upstairs and then by each line Chef before service and they were all marked and sealed. The Chefs etal. disregard these reasonable measures and the risk of serious harm it is unexcusable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

6/11/22                                    Daniel Gyer

p 2 of 2