NITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>David M. Martinko</u>

 v.             Civil No. 22-cv-238-LM

<u>N.H. Department of Corrections et al.</u>

### REPORT AND RECOMMENDATION

Before the court in this prisoner civil rights action is plaintiff David M. Martinko's motion for a preliminary injunction (Doc. No. 2).  In his motion, Mr. Martinko asserts that the meals served to him by the kitchen at the New Hampshire State Prison ("NHSP") do not comply with his religious "no pork" diet, in violation of his rights under the First Amendment Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Mr. Martinko further asserts that the NHSP kitchen does not take adequate precautions to eliminate the risk that his meals contain no pork products, and to eliminate the risk of pork "cross-contamination" of his meals.  Mr. Martinko requests that this court order the New Hampshire Department of Corrections ("DOC") to provide him with cost-free access to no-pork meals through the NHSP canteen, while this lawsuit is pending.[1]

---

[1] The motion for preliminary injunction (Doc. No. 2) includes a request for a second type of preliminary relief: an order prohibiting defendants from retaliating against the plaintiff or any witnesses while this lawsuit is pending.  Mr.

In response to the motion for a preliminary injunction and the court's inquiry at the March 3, 2023 case management conference in this matter, the defendants have filed documents stating that the DOC is prepared to provide the plaintiff with a kosher diet to be served in the dining hall.  Defendants further assert that the kosher diet, as well as their food-handling processes, will completely address the plaintiff's concerns. See Doc. No. 25.  Defendants assert that the plaintiff has declined to accept that offer, which remains available to him.

Plaintiff has filed a proposed counter-offer.  Doc. No. 33. Plaintiff proposes that he be allowed to receive kosher diet meals or no pork meals, at his preference.  Defendants have not accepted that offer, finding it to be inconsistent with prison policy.

Upon receipt of the defendants' representations that plaintiff could bein to receive a kosher diet, the court continued the evidentiary hearing it had scheduled for March 9, 2023.  The court then provided the parties with an opportunity to proceed on offers of proof and via oral argument on that date, as to whether Mr. Martinko could demonstrate a need for a

---

Martinko withdrew that portion of his requested relief on the record in the March 3, 2023 case management conference.  His prior request for such relief is therefore properly denied as moot and, even if it were not withdrawn, would otherwise be properly denied for reasons stated in the August 30, 2022 Report and Recommendation (Doc. No. 5).

2

preliminary injunction, in light of the availability of a kosher diet while this lawsuit remains pending.

## Preliminary Injunction Standard

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation omitted). Irreparable harm and likelihood of success are the factors that weigh most heavily in the analysis, see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Shurtleff v. City of Bos., 928 F.3d 166, 171 n.3 (1st Cir. 2019); Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010).

The court may rule on a motion for a preliminary injunction without an evidentiary hearing if it has before it "'adequate documentary evidence upon which to base an informed, albeit preliminary conclusion,'" and the parties have been afforded "'a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions.'" Campbell Soup Co. v. Giles, 47 F.3d 467, 470-71 (1st Cir. 1995) (citations omitted). Here, the parties have had such an opportunity. The plaintiff's motion, therefore, is ripe for

disposition at this time.

**<u>Irreparable Harm</u>**

"'[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2948, at 129 (2d ed. 1995)).  Absent a showing that the movant will suffer irreparable harm if the court declines to order the relief sought, a motion for a preliminary injunction may be denied. See Braintree Labs., 622 F.3d at 41 (irreparable harm is "'the essential prerequisite for equitable relief'" (citation omitted)).

In the context of claims of violations of RLUIPA or of the First Amendment right to the free exercise of religion, irreparable harm may be found in circumstances where a plaintiff would be precluded from engaging in his religious practice unless the court issued an injunction. Ramirez v. Collier, 142 S. Ct. 1264, 1278 (2022) (capital defendant who could not engage in religious practice in his execution chamber demonstrated irreparable harm).  "'[A] presumption of irreparable injury

4

flows from a violation of constitutional rights,'" or a prisoner's rights under RLUIPA, in such cases. Tripathy v. Lockwood, No. 22-949-PR, 2022 U.S. App. LEXIS 34929, at *5-*6. 2022 WL 17751273, at *2 (2d Cir. Dec. 19, 2022) (citation omitted).

### RLUIPA and Free Exercise Claims

RLUIPA bars certain prisons, including the NHSP, "from substantially burdening an inmate's religious exercise unless the regulation under attack is the least restrictive way to advance a compelling state interest." Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011). In general, RLUIPA provides more protections to an inmate's religious exercise than the First Amendment Free Exercise Clause. Yahtues v. Dionne, No. 16-cv-174-SM, 2020 DNH 050, 2020 U.S. Dist. LEXIS 53254, at *30, 2020 WL 1492877, at *10 (D.N.H. Mar. 27, 2020) (citations omitted). "Therefore, '[i]f there is no RLUIPA violation, there will be no Free Exercise Clause violation.'" Id. (citations omitted).

To establish a violation of RLUIPA, the "plaintiff bears the burden of demonstrating that he or she wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." LeBaron v. Spencer, 527 F. App'x 25, 28 (1st Cir. 2013) (internal quotation marks and citation

5

omitted); see also Bader v. Wrenn, 675 F.3d 95, 99 (1st Cir. 2012) (no RLUIPA violation shown as to transfer of prisoner that reduced his access to group worship and counseling, where those religious "disadvantages" depended proximately on decisions and actions not attributable to the government's actions in transferring the prisoner).

Once a plaintiff has established that his religious exercise has been substantially burdened by a government policy, the onus shifts to the government to show that the burden furthers a compelling governmental interest and that the burden is the least restrictive means of achieving that compelling interest. Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007).  This allocation of burdens applies equally in the context of motions for a preliminary injunction. Ramirez, 142 S. Ct. at 1277.

### NHSP Kosher Diet

Defendants filed a declaration, executed under the penalty of perjury, of Jonathan K. Hanson, DOC Director of Administration, whose responsibilities include overseeing the implementation of all prison policies relating to food service, safety, sanitation, and hygiene.  Doc. No. 29, at 1.  Director Hanson prepared his declaration, relying on his own knowledge and experience, in consultation with the prison's nutritional

consultant, the prison chaplain, the prison's chef supervisor, and the prison's food service director. Id. at 1-2. Defendants have explained that a kosher diet will be made available to Mr. Martinko the day that he signs up for it, and that it will continue to be offered to him for the duration of this lawsuit. Id. at 2.

Director Hanson explained that the prison's kosher diet is consistent with the dietary practices of Messianic Jewish inmates like Mr. Martinko who follow a no-pork diet, as no pork or pork-products are included in the kosher diet. Id. The "kosher diet provided by the DOC meets the guidelines established by the DOC chaplains and the consulting rabbi" for those prisoners who follow a kosher diet. Id. The meals served to prisoners receiving the kosher diet are nutritionally equivalent to the meals served to prisoners receiving the "no-pork" diet and to the meals served to prisoners who do not receive special diets, even though there are additional strictures imposed upon the dietary practices of prisoners who receive kosher diets, which their kosher meals satisfy, which "no-pork" diet prisoners do not require as part of their religious practices. Id. at 3.

Director Hanson's declaration explains that the kosher entrée for each meal is purchased from a vendor that is contractually obligated to meet kosher food preparation

7

standards.  Id.  The vendor's product is a shelf-stable entree that the DOC receives in a sealed package, which remains sealed throughout the storage and preparation process until the prisoner receiving it opens it.  Id.  Other kosher foods served to prisoners on the kosher diet (such as fresh vegetables and bread) are stored and prepared using kosher compliant, dedicated surfaces and utensils, to avoid the risk of cross-contamination.  Id.

### Mr. Martinko's Claim of Punitive Nature of Kosher Diet

Mr. Martinko concedes that the kosher diet would address his concerns for cross-contamination.  He has argued that preliminary injunctive relief remains necessary, however, as the kosher diet is "punitive" insofar as it excludes some foods his religious diet would allow.  By his calculation, there are ten meal varieties offered to prisoners on the kosher diet, while there are twenty-three no-pork meal varieties served to prisoners not on the kosher diet on a four week rotation (a difference of thirteen varieties within a four-week period), and a total of forty-two meal varieties served to prisoners not on any special diet.  The types of no-pork foods unavailable to those on the kosher diet include scrambled eggs, pancakes, macaroni and cheese, and pizza, which the plaintiff enjoys and would have to forego.  In addition, the prison offers holiday

8

meals on special occasions including Superbowl Sunday (hamburgers), Memorial Day, the Fourth of July, Thanksgiving and Christmas (turkey, stuffing, "real mashed potatoes," cranberry sauce, and pie), which he could eat on a no-pork diet but would miss if he were on the kosher diet.

    This court's responsibility in ruling on a preliminary injunction motion in a case involving allegations of RLUIPA violations is to ensure the prevailing plaintiff has access to a menu that is consistent with his religious diet, provided he is otherwise eligible for preliminary injunctive relief.  The court issuing a preliminary injunction is not required to provide the plaintiff with his preferred choice of foods among the widest variety of options available at the prison that his diet allows.  The court can issue equitable relief only to the extent necessary to avoid a risk of irreparable harm, which in the context of a religious diet claim would require the court to ensure that the plaintiff's diet is not substantially burdened by government action.  If this court were to grant Mr. Martinko relief on his preliminary injunction motion by, for example, requiring defendants to prepare his meals without including any pork products and to take all available measures to eliminate the risk of cross-contamination, the NHSP's provision of a kosher diet and the processes employed to serve food to him, as set forth in Director Hanson's declaration, would appear to

9

satisfy such an order.

This court is not persuaded that the prison's kosher diet is "punitive" or inconsistent with his religious diet. The defendants offered him access to the kosher diet only after the court suggested that such an offer might address his concerns and allegations about cross-contamination and hidden pork in the NHSP no-pork diet, while this action is pending. And Mr. Martinko concedes that such a diet would satisfy his religious dietary requirements. The timing and circumstances of the offer of a kosher diet appear to be an offer of compromise, not an intent to punish.

Furthermore, approximately twenty prisoners currently receive the kosher diet on a regular basis as their religious diet. There is no evidence before the court to suggest that any prisoners have ever received the kosher diet as punishment. More than a few prisoners, including some at the NHSP, have litigated their right to a kosher diet; for them, the kosher diet is a remedy or relief on their claims, not punishment.

In the specific context of religious diet claims, irreparable harm may be found where a plaintiff shows that prison policies place him in the position of foregoing non-compliant meals on a daily basis, or violating his sincerely held belief that he must observe his religious diet, a dilemma that the prisoner faces every day until the matter is resolved.

10

Turner v. Collier, No. 4:19-CV-04124, 2022 U.S. Dist. LEXIS 179663, at *27, 2022 WL 4734828, at *10 (S.D. Tex. Sept. 30, 2022), appeal filed, No. 22-20583 (5th Cir. Nov. 4. 2022).  The evidence at this preliminary stage of the case shows that the prison's kosher diet is nutritionally adequate and comparable to the meals other prisoners receive.  And, when served to Mr. Martinko, the kosher diet would not place him in the position of having either to forego a nutritious meal or to partake of food his religion requires he avoid.  Mr. Martinko has identified no authority for the proposition that having a rotating menu of ten nutritionally balanced meals, prepared according to procedures approved by a consulting rabbi, places any substantial burden on his no-pork religious diet.

   Mr. Martinko has the ability to partake of a religious diet that satisfies the requirements of his religious diet and addresses his concerns about cross-contamination, for the duration of this lawsuit.  While he has chosen not to accept that offer, the record shows he may reconsider that decision at any time and begin to receive the kosher diet within a matter of hours upon his request.  His ability to avoid noncompliance with the strictures of his no-pork diet is within his control; no court order is necessary to protect his right to a diet that meets his religious requirements during the pendency of this lawsuit.  Accordingly, the district judge should DENY

11

plaintiff's motion for a preliminary injunction (Doc. No. 2), without prejudice, as the plaintiff has not shown that he will suffer any irreparable harm while this lawsuit remains pending, as a result of defendants' policies or practices, in the absence of court-ordered relief.[2]

## Conclusion

For the foregoing reasons, the district judge should deny the motion for a preliminary injunction (Doc. No. 2) without prejudice.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  The objection period may be extended upon motion.  Failure to file any objection within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'"  Id. (citations omitted).

---

[2] Denying the motion for a preliminary injunction without prejudice would not preclude Mr. Martinko from filing a new motion for a preliminary injunction, going forward, if he is able to show a likelihood of irreparable harm in the absence of court-ordered relief, a likelihood of success on the merits, and that the balance of equities and the public interest warrant such relief.  Further, the District Judge's approval of this Report and Recommendation would not resolve Mr. Martinko's claims for permanent injunctive relief, as the defendants have, at this time, promised only that they will make a kosher diet available to Mr. Martinko for the duration of the lawsuit.

12

_[signature]_
_____
Andrea K. Johnstone
United States Magistrate Judge

March 10, 2023

cc:   David M. Martinko, pro se
      Laura D. Devine, Esq.
      Brandon F. Chase, Esq.
      Brendan A. O'Donnell, Esq.