**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>David M. Martinko</u>

            v.                              Case No. 22-cv-238-LM

<u>New Hampshire Department of</u>
<u>Corrections Commissioner et al.</u>[1]


## REPORT AND RECOMMENDATION

     Before the court is New Hampshire Department of Corrections

("DOC") prisoner David M. Martinko's Complaint (Doc. No. 1) and

an addenda to that Complaint (Doc. Nos. 7, 32-1).  In his

pleadings, Mr. Martinko is seeking a remedy on his claims,

relating to his attempt to follow the strictures of his

religious diet while at the New Hampshire State Prison ("NHSP"),

and the emotional or mental health consequences he attributes to

defendants' conduct.  Mr. Martinko claims violations of the

First Amendment Free Exercise Clause, the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), the Eighth Amendment,

as well as claims arising under state law.  Mr. Martinko's

---

[1] Defendants who have been served in this matter are New
Hampshire Department of Corrections ("DOC") Commissioner Helen
Hanks; New Hampshire State Prison ("NHSP") Warden Michelle
Edmark; and the following DOC agents or contractors:
Administrator of Logistics Jonathan Hanson, Assistant
Administrator of Logistics Jeff Smith, Kitchen Supervisor Robert
Heath, (former) Kitchen Supervisor Todd Sheehan, Chef Supervisor
III Heather Cornock, Chef Hans Peter Bossert, Chef Jeff Jake,
Chef Jonathan Matteau, Chef Marcus Taylor, and Dietician T.
Popovich.  In the Order issued this date, the court has directed
service of Document Nos. 1 and 7 upon defendant C.J. Boulet.

pleadings are here for preliminary review, under 28 U.S.C.
§ 1915A, 28 U.S.C. § 1915(e)(2), and LR 4.3(d)(1).

## Preliminary Review Standard

The court conducts a preliminary review of complaints filed
by prisoners seeking relief from government agents.  See LR
4.3(d)(1); see also 28 U.S.C. § 1915A.  In considering whether
the complaint states a claim, the court determines whether,
stripped of legal conclusions, and with all reasonable
inferences construed in the plaintiff's favor, the complaint
contains "sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Claims may
be dismissed, sua sponte, if the court lacks jurisdiction, a
defendant is immune from the relief sought, or the complaint
fails to state a claim upon which relief may be granted.  See 28
U.S.C. § 1915A(b); LR 4.3(d)(1)(A).  Because Mr. Martinko is
proceeding pro se, the court construes his filings liberally.
See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background

Mr. Martinko practices the Messianic Jewish faith.  He
follows dietary restrictions as a religious practice,
specifically, avoiding foods made with leavening during
Passover, and at all times, following a diet, which eschews

2

pork, ham, bacon, gelatin, and other foods derived from pork, as well as shellfish.  Mr. Martinko asserts that his religious diet requires that his meals have not had contact with pork, and that the food preparation surfaces, equipment, and utensils used to store, fix, and serve his meals have not been used for pork without having been properly washed.

The NHSP dining hall makes no-pork meals available to prisoners whose religious practices require that special diet. Mr. Martinko's name appears on the NHSP Chaplain's list of such prisoners.  Prisoners on the list must specifically ask for the "pork alternative" at each meal at which pork is served.

Once he requests the pork alternative or signs up for Passover meals in advance, Mr. Martinko has to rely on the NHSP kitchen staff to prepare and serve him meals consistent with his religious diet, unless he buys prepackaged items from the prison canteen.  He asserts that the line servers often do not know whether a meal is compliant with his religious diet, and ingredient lists for items are often unavailable.  He estimates that the kitchen staff provides inaccurate or inconsistent answers about the pork content of a meal about five times per week.

Mr. Martinko has alleged that substandard practices in the kitchen increase the risk that his meals have been "cross-contaminated" by contact with pork products.  He asserts that NHSP kitchen meat slicers are not cleaned between the slicing of

different meats, hands are not washed between the handling of
different meats, meats are stored above vegetables (which may
then be served as part of the "pork alternative"), foods
delivered from the DOC warehouse may not match what was ordered,
and workers preparing the meals do not always read the product
labels or ingredient lists.

Mr. Martinko distrusts the NHSP kitchen staff's compliance
with his religious diet.  He asserts that his conscience will
not allow him to eat foods that are commonly misidentified as
"no-pork," as he suspects they may contain pork products.

Mr. Martinko asserts he has suffered "severe anxiety" and
emotional distress, including symptoms of sadness, depression,
and anger, because of his lack of certainty about whether the
dining hall meals comply with his religious diet.  He asserts he
had a "mental breakdown" in March 2021, which led him to seek
out an emergency mental health appointment.  The mental health
counsellor who listened to his concerns at that time suggested
he speak with the Chaplain and the kitchen staff, to which he
replied, "I tried that."

Mr. Martinko alleges that in the weeks after that
appointment, he appeared at mental health sick call several
times, seeking help with coping strategies or other treatment
for his persistent anxiety and emotional distress.  At those
appointments, he asserts that defendant Mental Health Counselor
S. Pasciuto listened to his concerns and then told him that he

4

appeared to be presenting a Chapel or kitchen problem.  She
advised that he talk to the Chaplain and the kitchen about his
concerns and further suggested that he avoid the stress of the
dining hall by purchasing food from the prison canteen.  When
Mr. Martinko asked Ms. Pasciuto if she could help him by
directing the kitchen staff to provide him with dining hall
meals served in his cell ("cell feeds") for thirty days, Ms.
Pasciuto again referred him to the Chaplain.  Mr. Martinko
asserts that the Chaplain lacks the authority to order cell
feeds.

Mr. Martinko asserts he has used the NHSP inmate request
slip and grievance process to complain about kitchen practices
that he believes affect his religious diet, and his mental and
emotional health.  He alleges that he received a response from
one defendant threatening to file disciplinary reports against
him for lying, and other responses suggesting strategies that
have not worked, like asking for the list of ingredients.  Other
prison officials have ignored his complaints or have stated that
they would remind the staff of its obligations relating to his
concerns.

Mr. Martinko filed this action seeking damages from the
defendants in their individual capacities, and he seeks
injunctive and declaratory relief against them in their official
capacities.  This court directed service of the Complaint in its
August 30, 2022 Order (Doc. No. 6), for reasons stated in the

August 30, 2022 Report and Recommendation (Doc. No. 5) ("August R&R"). Upon review of the plaintiff's objection to that R&R, the district judge directed the magistrate judge to reconsider it in light of the objection that the plaintiff had filed (Doc. No. 7). The district judge took that R&R and the objection under advisement, pending the magistrate judge's review.

Thereafter, in March 2023, Mr. Martinko filed a supplemental affidavit of Seth Bader, see Doc. No. 32-1, which the court stated that it would consider in connection with his claims. See Mar. 10, 2023 Order. The Order issued this date has vacated and withdrawn the August R&R and has deemed Document Nos. 7 and 32-1 to be addenda to the complaint, going forward.

## **Claims**

Construed liberally, Mr. Martinko's complaint and its addendum assert the following claims under 42 U.S.C. § 1983, RLUIPA, and state law:

> 1. The "Kitchen Defendants" (Robert Heath, Heather Cornock, Pete Bossert, Jake LNU, Mattel LNU, Marcus LNU, Beth LNU, C.J. Boulet, and ten unnamed DOC employees working as NHSP kitchen line servers (identified as "John Does 1-10")), have violated Mr. Martinko's First Amendment rights under the Free Exercise Clause, in that:
>
> > a. They have served him meals which do not comply with his religious diet; and
> >
> > b. They have caused him to choose between his religious diet and a nutritious diet, or a diet reliant upon prison canteen food that is costly for him.

2.   The Kitchen Defendants have substantially burdened Mr. Martinko's religious exercise, without furthering a compelling governmental interest by the least restrictive means, in violation of RLUIPA, in that:

    a.   They have served him meals which do not comply with his religious diet; and

    b.   They have caused him to choose between his religious diet and a nutritious diet, or a diet reliant upon prison canteen food that is costly for him.

3.   The Kitchen Defendants have violated Mr. Martinko's Eighth Amendment rights by serving him pork or causing him to believe he has been served pork, without providing him with an acceptable no-pork alternative, which has caused him persistent severe anxiety, emotional distress, and/or nutritional deficits.

4.   The "Supervisory Defendants" (DOC Commissioner Helen Hanks, Warden Michelle Edmark, Administrator of Logistics Jonathan Hanson, Assistant Administrator of Logistics Jeff Smith, Kitchen Supervisor Heath, (former) Kitchen Supervisor Sheehan, Administrator Boulet, Chef Supervisor III Cornock, Dietician T. Popovich, and John Does 1-10) have violated Mr. Martinko's First Amendment rights under the Free Exercise Clause, in that:

    a.   They have failed to respond effectively to Mr. Martinko's grievances and complaints about non-compliance with his religious diet;

    b.   They have failed to train the kitchen staff appropriately about his religious diet;

    c.   They have allowed for kitchen practices that increase the risk of pork contacting or cross-contaminating his no-pork diet;

    d.   They have failed to ensure that he receives meals that comply with his religious diet; and

    e.   They have caused him to choose between his religious diet and a nutritious diet, or a diet reliant upon prison canteen food that is costly for him.

5.    The Supervisory Defendants have violated Mr. Martinko's Eighth Amendment rights by allowing him to be served pork, without consistently providing him with an acceptable no-pork alternative, which has caused him persistent anxiety, emotional harm, and/or nutritional deficits.

6.    The Supervisory Defendants have substantially burdened Mr. Martinko's religious exercise, without furthering a compelling governmental interest by the least restrictive means, in violation of RLUIPA, in that:

     a.    They have failed to respond effectively to Mr. Martinko's grievances and complaints about non-compliance with his religious diet;

     b.    They have failed to train the kitchen staff appropriately about his religious diet;

     c.    They have allowed for kitchen practices that increase the risk of pork contacting or cross-contaminating his no-pork diet;

     d.    They have failed to ensure that he receives meals that comply with his religious diet; and

     e.    They have caused him to choose between his religious diet and a nutritious diet, or a diet reliant upon prison canteen food that is costly for him.

7.    The "Mental Health Defendants" (DOC Director of Medical and Forensic Services Paula Mattis, Administrator of Mental Health Abbey Simon, and Mental Health Counselor Pasciuto) have violated Mr. Martinko's rights under the Eighth Amendment, in that, with deliberate indifference to a substantial risk of serious harm:

     a.    Ms. Pasciuto failed to provide him with mental health treatment, advising him instead to avoid the dining hall, to buy food from the canteen, and to seek help from the Chaplain and kitchen staff; and

     b.    Ms. Pasciuto's supervisors, Director Mattis and Ms. Simon, failed to ensure that Mr. Martinko received mental health treatment.

8.    The Kitchen Defendants and Supervisory Defendants have violated Part 1, Articles 5 and 33 of the New Hampshire

Constitution, and the Mental Health Defendants have violated Part 1, Article 33 of the New Hampshire Constitution.

9.    The Kitchen Defendants and the Supervisory Defendants are liable for breach of contract, by failing to provide Mr. Martinko with three wholesome and nutritious meals per day and by failing to comply with state laws, policies, and standards for food service and special diets, in violation of the "2001 Laaman Decree."

## **Discussion**

### I.    Free Exercise Clause (Claims 1(a)-(b), 4(a)-(e))

#### A.    Elements

Prisoners retain the protections afforded by the Free Exercise Clause, "'including its directive that no law shall prohibit the free exercise of religion.'" Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008) (citation omitted).  A Free Exercise Clause violation may be found if the prison has placed a substantial burden on a central religious belief or practice, without any justification.  See Roman Cath. Bishop v. City of Springfield, 724 F.3d 78, 101 (1st Cir. 2013) ("the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden" (internal quotation marks and citations omitted)); Lebaron v. Spencer, 527 F. App'x 25, 32 (1st Cir. 2013) (defendants who failed to specify "the legitimate government interests justifying the impingement" on a

prisoner's religious exercises could not obtain summary judgment on his First Amendment Free Exercise Clause claim).

A restriction on a prisoner's First Amendment rights is deemed valid if it is "'reasonably related to legitimate penological interests.'"   See Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  Courts have identified a list of factors that are relevant to this inquiry:

> "(1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation."

Lebaron, 527 F. App'x at 31-32 (quoting Kuperman, 645 F.3d at 74).

In examining a restriction on a prisoner's First Amendment rights under such factors, substantial deference must be given to prison administrators' judgment in defining legitimate goals for the corrections system, and for determining the best means of accomplishing those goals.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003).  The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  Id.

B.    <u>Kitchen Defendants (Claims 1(a)-(b))</u>

In Complaint's allegations summarized here as Claims 1(a) and (b), Mr. Martinko seeks damages against the Kitchen Defendants in their individual capacities, and he seeks injunctive relief against those defendants in their official capacities.  As to Claims 1(a)-(b), Mr. Martinko has stated First Amendment Free Exercise Clause claims upon which relief might be granted under 42 U.S.C. § 1983.  In an Order issued this date, the court directs service upon the Kitchen Defendants with regard to those claims.

C.    <u>Supervisory Defendants (Claims 4(a)-(e))</u>

With regard to the Complaint's allegations summarized here as Claims 4(a)-(e), Mr. Martinko has stated actionable Free Exercise Clause claims for damages against the Supervisory Defendants in their individual capacities and actionable claims for injunctive relief against those same defendants in their official capacities.  In an Order issued this date, this court directs service of Claims 4(a)-(e) on the Supervisory Defendants.

II.  <u>RLUIPA (Claims 2, 6)</u>

A.    <u>Damages</u>

The Eleventh Amendment bars claims for damages asserted under RLUIPA against defendants in their official capacities.

See Sossamon v. Texas, 563 U.S. 277, 293 (2011). Judges in this jurisdiction have followed the well-reasoned opinions of every federal appellate court to address the issue, in concluding that RLUIPA does not authorize claims for damages against prison officials in their individual capacities. See, e.g., Staples v. N.H. State Prison, No. 16-cv-033-PB, 2017 DNH 023, 2017 WL 519189, at *2, 2017 U.S. Dist. LEXIS 17895, at *6-7 (D.N.H. Feb. 8, 2017) (citing cases); Pabon v. Cheshire Cty. Dep't of Corr., No. 15-CV-115-LM, 2015 U.S. Dist. LEXIS 100019, at *2-3, 2015 WL 2092808, at *1 (D.N.H. Apr. 17, 2015), R&R approved, 2015 U.S. Dist. LEXIS 58717, 2015 WL 2092808, at *1 (D.N.H. May 1, 2015). Accordingly, the district judge should dismiss Mr. Martinko's RLUIPA claims seeking damages.

### B.   RLUIPA Injunctive Relief Standard

RLUIPA prohibits the government from imposing a "substantial burden" on a prisoner's "religious exercise" unless the imposition of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). A RLUIPA claim requires proof "that an institutionalized person's religious exercise has been burdened" and "that the burden is substantial." Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007); see also Ramirez v. Collier, 142 S. Ct. 1264, 1277 (2022). Once a

prisoner proves these elements, the burden shifts to the government to prove that the burden on the prisoner's religious exercise furthers a compelling governmental interest, and that the burden imposed is the least restrictive means of achieving that interest.  Ramirez, 142 S. Ct. at 1277.

RLUIPA provides greater protection than the First Amendment with respect to prisoners' religious practices.  See Kuperman, 645 F.3d at 79; see also Holt v. Hobbs, 574 U.S. 352, 361-62 (2015) ("RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise.").

Mr. Martinko asserts that the Kitchen Defendants' and Supervisory Defendants' practices that give rise to the claims identified here as Claims 2 and 6 have substantially burdened his religious practice by interfering with his religious diet, and that those practices do not further any compelling governmental interest by the least restrictive means available. Mr. Martinko has stated claims upon which injunctive relief can be granted under RLUIPA against those defendants in their official capacities.  As directed in an Order issued this date, the Court directs service with regard to Mr. Martinko's claims for injunctive relief under RLUIPA, identified here as Claims 2(a)-(b) and 6(a)-(e), on the Kitchen and Supervisory Defendants in their official capacities.

III.  Eighth Amendment (Claims 3, 5, 7)

    A.   Eighth Amendment Standard

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (citations omitted).  The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate nutrition, medical services, and mental health care.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).

An Eighth Amendment conditions-of-confinement claim has both an objective and a subjective component.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Where an alleged failure to treat a prisoner's health problems forms the basis of the claim, the objective component of an Eighth Amendment claim may be established by evidence of a serious medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016).

To prevail on an Eighth Amendment claim, a prisoner must also present evidence of the defendant's culpable state of mind.  See Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014).  A showing of deliberate indifference to a substantial

risk of serious harm satisfies the subjective prong of an Eighth Amendment claim.  See Farmer, 511 U.S. at 834.  To establish deliberate indifference, the prisoner must demonstrate that defendants were aware of facts that gave rise to an inference that a substantial risk of serious harm existed; defendants drew the inference that such a risk existed; and defendants, by act or omission, did not take reasonable steps to ameliorate the risk.  See id. at 828-29; Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018).  Deliberate indifference may be manifested in "'wanton disregard to a prisoner's needs . . . akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." Abernathy, 984 F.3d at 6 (citation omitted).

A showing of a defendant's inadvertence or negligence is insufficient to satisfy the subjective component of an Eighth Amendment claim.  See Kosilek, 774 F.3d at 83; Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) ("substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation" (internal citations and quotation marks omitted)).  "'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" Kosilek, 774 F.3d at 83 (citation omitted).

B.    Section 1983 and Supervisory Liability

A federal civil rights statute, 42 U.S.C. § 1983, provides
a cause of action for constitutional claims asserted against
individuals for actions they have taken under color of state
law.  "Generally, a supervisor cannot be held liable under
§ 1983 on a respondeat superior theory." Justiniano v. Walker,
986 F.3d 11, 20 (1st Cir. 2021).  In other words, "§ 1983
liability cannot rest solely on a defendant's position of
authority."  Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19
(1st Cir. 2014).  The liability of a supervisor must be based on
his or her own actions or inactions that caused the violation,
or on a showing that his or her conduct "'led inexorably to'" a
subordinate's violation of the plaintiff's constitutional
rights.  Justiniano, 986 F.3d at 20 (citation omitted).


C.    Kitchen and Supervisory Defendants (Claims 3, 5)

With respect to claims challenging prison food service, the
Eighth Amendment requires "'nutritionally adequate food that is
prepared and served under conditions which do not present an
immediate danger to the health and well being of the inmates who
consume it.'" Abreu v. Lipka, 778 F. App'x 28, 32 (2d Cir.
2019) (citation omitted).  Mr. Martinko's allegations, taken as
true, suggest that he has been served meals that do not comply
with his religious diet; that he now distrusts the ability of
the NHSP Kitchen Defendants to make sure that his meals comply

with his religious diet; that he skipped three meals during one Passover holiday, and that he regularly skips meals for fear of their possible pork content.  Mr. Martinko states that he has sought mental health assistance for his emotional pain and suffering resulting from these issues.

Assuming, without deciding, that Mr. Martinko has pleaded the existence of circumstances potentially satisfying the objective prong of his Eighth Amendment food service claim, the Complaint fails to satisfy the subjective component of such a claim.  Even if Mr. Martinko has pleaded facts that could show that NHSP kitchen practices result in violations of his religious diet, he has alleged no facts suggesting that any Kitchen Defendant is subjectively aware of pork in his food, the impact of missing a handful of meals in any given week, and its impact on his nutritional status, food choices, and mental health.  There are no facts in the Complaint suggesting that the Kitchen Defendants know that Mr. Martinko cannot adequately supplement his diet from the prison canteen to avoid nutritional deficits, or that the possibility of religious dietary noncompliance has led to emotional distress or other mental health issues that subject him to a substantial risk of serious harm.  Accordingly, the district judge should dismiss Claim 3.

Similarly, Mr. Martinko has not pleaded facts showing that any Supervisory Defendant has been deliberately indifferent to a substantial risk of serious harm to Mr. Martinko, or that any

Supervisory Defendant's acts or omissions have inexorably led to a violation of Mr. Martinko's Eighth Amendment rights.  Stripped of legal conclusions, the facts alleged in the Complaint -- including his nonspecific description of the responses to his grievances, taken as true, fail to show that any lack of training, supervisory deficits amounting to deliberate indifference, or grievance response has inexorably caused a violation of his Eighth Amendment rights.  Accordingly, the district judge should dismiss Claim 5 for failure to state a claim upon which relief can be granted.


    D.   <u>Mental Health Defendants (Claims 7(a)-(b))</u>

In the allegations summarized here as Claim 7(a) and 7(b), Mr. Martinko claims that Ms. Pasciuto, and her supervisors, Director Mattis and Ms. Simon, are liable under § 1983 for violating his Eighth Amendment rights by failing to treat his depression, "severe anxiety," and/or emotional distress, which he attributes to distrusting the dining hall's ability to meet his nutritional needs with a diet that complies with his religious practices.  He alleges that he obtained an "emergency mental health appointment" for a "mental breakdown" on March 31, 2021.  He further alleges that he has met with mental health counselors at the NHSP since that date seeking help coping with persistent anxiety and emotional distress.  He states that he has been denied treatment, although he does not clarify what

type of treatment he might need which has been denied, or whether he has any diagnosed mental health condition that requires the treatment he claims he has not received.

Mr. Martinko alleges that in his single emergency mental health appointment and several subsequent "sick call" appointments with mental health providers at the NHSP in 2021, Ms. Pasciuto listened to his concerns and proposed solutions which he did not think were viable. Without further allegations regarding the treatment he has not received or his diagnoses, however, nothing alleged in the Complaint suggests that the approach to Mr. Martinko's issues undertaken by Ms. Pasciuto manifested deliberate indifference to any known, substantial risk of serious harm to Mr. Martinko.

As to Ms. Pasciuto's supervisors, the Complaint lacks any allegations regarding their acts or omissions which could suggest that they were aware of and deliberately indifferent to any known unmet serious mental health need Mr. Martinko has presented, or that they acted or failed to act in any way that could have inexorably caused Mr. Martinko to be subjected to a substantial risk of serious harm. Accordingly, Mr. Martinko has failed to state any Eighth Amendment claim upon which relief can be granted, against any named defendant, based on inadequate mental health care, and the district judge should dismiss Claims 7(a) and 7(b).

19

IV.  State Constitutional Claims (Claim 8)

Mr. Martinko asserts claims for violations of his rights under Part 1, Articles 5 and 33 of the New Hampshire Constitution, based on the incidents that form the basis of his claims under 42 U.S.C. § 1983.  Claims "that a defendant violated the state constitution cannot be brought under § 1983," and the New Hampshire Constitution does not provide any specific remedies for violations.  Elwell v. Correia, No. 18-cv-906-LM, 2022 DNH 004, 2022 U.S. Dist. LEXIS 2151, at *4, 2022 WL 45327, at *2 (D.N.H. Jan. 4, 2022) (citations omitted).  Furthermore, the New Hampshire Supreme Court has not recognized a private cause of action for damages under either Part I, Article 5, or Part 1, Article 33.  See Ali v. Reilly, No. 12-cv-364-SM, 2013 U.S. Dist. LEXIS 77549, at *8, 2013 WL 3367098, at *4 (D.N.H. June 3, 2013), R&R approved, 2013 U.S. Dist. LEXIS 94172, 2013 WL 3367098, at *1 (D.N.H. July 3, 2013) (dismissing Part 1, Art. 5 claims); see also Elwell, 2022 U.S. Dist. LEXIS 2151, at *4, 2022 WL 45327, at *2 (dismissing Part 1, Art. 33 claims).

The decision whether to recognize a cause of action for violations of the New Hampshire Constitution may involve policy questions that the state courts must assess in the first instance.  See Bleish v. Moriarty, No. 11-CV-162-LM, 2011 U.S. Dist. LEXIS 142182, at *15-16, 2011 WL 6141271, at *5-6 (D.N.H. Dec. 9, 2011).

> [I]t is not for a federal court to police the
> boundaries of a state constitution for violations by
> its officials.  This is for important reasons of
> Eleventh Amendment sovereign immunity as well as
> respect for comity among sovereign judicial systems.

ACA Int'l v. Healey, 457 F. Supp. 3d 17, 24 (D. Mass. 2020).

see also Dionne v. Amatucci, No. 10-cv-230-PB, 2011 DNH 170,

2011 U.S. Dist. LEXIS 120394, at *20, 2011 WL 4915550, at *7

(D.N.H. Oct. 17, 2011).  Giving effect to those considerations,

the district judge should dismiss Claim 8 without prejudice to

Mr. Martinko's ability to litigate such claims in state court.


V.    Laaman Claims (Claim 9)

     Mr. Martinko asserts breach of contract claims arising from

what he alleges are violations of the "2001 Laaman Decree."  His

citation refers to Laaman v. Helgemoe, No. 75-cv-258 (D.N.H.), a

class action lawsuit filed in federal court in 1975, challenging

conditions of confinement at the New Hampshire State Prison.  On

July 6, 2001, the court in that case approved a settlement

agreement, which incorporated the terms of a consent decree

originally issued in 1978, which had been modified in 1990.  See

Laaman, 2001 U.S. Dist. LEXIS 27306 (D.N.H. July 6, 2001) (ECF

No. 523).

> The July 6, 2001 Order [in Laaman] terminated federal
> court jurisdiction over the matter, and provided that
> the 1990 consent decree, as modified by the settlement
> agreement, would constitute a final settlement
> agreement that would be enforceable in the state
> courts of New Hampshire.

Polansky v. N.H. Dep't of Corr., No. 16-cv-256-LM, 2016 U.S. Dist. LEXIS 181052, at *15 (D.N.H. Nov. 28, 2016), R&R approved, 2016 U.S. Dist. LEXIS 181055 (D.N.H. Dec. 29, 2016).

    None of the defendants here is a signatory to that settlement agreement in his or her individual capacity. Accordingly, none of them can be held liable in an individual capacity with respect to Mr. Martinko's breach of contract claims.

    Furthermore, the Eleventh Amendment precludes an exercise of federal jurisdiction over any official capacity claims Mr. Martinko asserts based on the Laaman settlement agreement, as the state's Eleventh Amendment immunity has not been abrogated or waived.  See Polansky, 2016 U.S. Dist. LEXIS 181052, at *15; see also Sossamon, 563 U.S. at 285 ("a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court"); Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 542 (2002) (supplemental jurisdiction under 28 U.S.C. "§ 1367(a) does not extend to claims against nonconsenting state defendants"); cf. Va. Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 256-57 (2011) ("Ex parte Young cannot be used to obtain . . . an order for specific performance of a State's contract" (citations omitted)).  Accordingly, the district judge should dismiss Mr. Martinko's Laaman claims (Claim 9), without prejudice to his ability to litigate such claims in state court.

## Conclusion

For the foregoing reasons, the magistrate judge recommends as follows:

     1.   The district judge should dismiss all of the Eighth Amendment claims in this case (Claims 3, 5, 7(a), 7(b));

     2.   The district judge should partially dismiss the RLUIPA claims in this case, to the extent that they are asserted against any defendant in his or her individual capacity and to the extent that they seek damages against any defendant in his or her individual or official capacity.

     3.   The district judge should drop defendants S. Pasciuto, Paula Mattis, and Abbey Simon, as parties, as the Complaint and its addenda fail to state a claim upon which relief might be granted against any of them.

     4.   The district judge should dismiss the Laaman claims and the state constitutional claims in this case (Claims 8 and 9), without prejudice to Mr. Martinko's ability to litigate those state law claims in state court.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the written objections to this Report and Recommendation "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Id. (citations omitted).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 3, 2023

cc:  David M. Martinko, pro se
     Brandon Francis Chase, Esq.
     Brendan Avery O'Donnell, Esq.