UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

David M. Martinko

   v.                                           Case No. 22-cv-238-LM-AJ

N.H. Department of Corrections et al.

**REPORT AND RECOMMENDATION**

Before the court in this prisoner civil rights case is plaintiff David M. Martinko's (second) motion for a preliminary injunction ("Second PI Motion") (Doc. No. 48), seeking a religious diet, free of pork and pork product cross-contamination, which he proposes should be comprised of New Hampshire State Prison ("NHSP") canteen food.  The defendant New Hampshire Department of Corrections ("NHDOC") officials and employees object, maintaining that the kosher diet presently served to Martinko in the NHSP chow hall does not violate his religious rights.  Doc. No. 50.

The Second PI Motion focuses on the NHSP kitchen's serving-line practices, which, Martinko argues, result in the pork cross-contamination of his kosher meals, in violation of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[1]  The Second PI Motion is fully briefed,

---

[1] Martinko has asserted claims under both the First Amendment and RLUIPA.  For reasons stated in the March 10, 2023 R&R (Doc. No. 34), this court may focus on the RLUIPA claims at

and neither party has requested a hearing. This court has before it sufficient documentary evidence to make an informed, albeit preliminary, determination regarding the prospect of irreparable harm and whether the plaintiff is likely to succeed on the merits of his claims for injunctive relief. For reasons explained more fully below, Martinko has not made the requisite strong showing of a likelihood of success on the merits of his RLUIPA claim, or any showing of irreparable harm, necessitating a mandatory injunction altering defendants' practices with respect to the preparation and service of his kosher meals.

## Background

I. Factual Background

The following facts are undisputed, except as otherwise noted. Plaintiff practices the Messianic Jewish faith. His religious practices include dietary restrictions. He avoids eating pork, ham, and pork products, as well as any food that pork, ham, or pork products have "cross-contaminated." See Aff. of David Martinko (June 15, 2022) ("Martinko Aff.") ¶¶ 2-3, 15 (Doc. No. 1-1).

Some but not all meals served in the NHSP chow hall contain pork. See Doc. No. 33; Compl. (Doc. No. 1) ¶ 31. Pork cross-contamination that would violate Martinko's religious diet can

---

this stage of the case. See id., 2023 U.S. Dist. LEXIS 55125, at *5 (RLUIPA is more protective than First Amendment as to prisoner's religious rights (citing cases)).

2

occur when pork products come into contact with his food. See id. ¶ 15; see also July 17, 2023 Response of NHDOC Chaplain Pelletier ("I agree that no part of your meal should have contact with pork.") (Doc. No. 53-1). Cross-contamination that violates his religious diet can also occur when pork comes into contact with a "surface" that touches his food (e.g., a utensil, a server's gloves, or his own hand after it has touched pork products). See Martinko Aff. ¶ 15(a).

In March 2023, the plaintiff switched from the NHSP's religious "no-pork" diet to the NHSP's kosher diet. See Second PI Motion ¶ 4. The NHDOC defines its "kosher/halal" diet as consisting of "food prepared to meet the dietary restrictions of those following a Jewish or Islamic religion." Doc. No. 29, at 17 (NHDOC Policy and Procedure Directive ("PPD") 672, Att. 6, "Religious Diet Request Application: Religious Services").

Although the NHSP kitchen is not a kosher kitchen, kitchen workers store and prepare kosher foods served to prisoners on the kosher diet (such as vegetables and kosher bread) using kosher-compliant surfaces and utensils. Dir. Jonathan K. Hanson's Decl. in Resp. to ECF 27 ("Hanson Decl. I") ¶¶ 7(2)(i), 7(4)(i) (Doc. No. 29). Other items served on kosher meal trays are prepackaged kosher foods. Depending on the time of day, the kosher meal tray served to prisoners on the kosher diet may contain a sealed prepackaged kosher entrée, prepackaged kosher

3

snacks, a paper bag containing a piece of fruit or plastic-wrapped vegetable slices; a Styrofoam cup containing salad, vegetables, or cold cereal; single-serving drink cartons or juice; and a disposable cup, all served on a cafeteria tray. Decl. of Jonathan Hanson (June 28, 2023) ¶ 8 (Doc. No. 49-1) ("Hanson Decl. II"); Decl. of Heather Cornock, Food Serv. Mgr. (Feb. 20, 2024) ¶¶ 6-9 (Doc. No. 64-2) ("Cornock Decl."); Photos (Doc. No. 64-6); Decl. of David Martinko (Feb. 22, 2024) ¶ 14 (Doc. No. 65-1) ("Martinko Decl."). The sealed entrée and prepackaged items remain sealed through the entire process until the prisoner receiving the tray opens the package. Martinko Decl. ¶ 12. In general, "all [kosher] foods handled by the serving line are in a package," whether it be the paper bag, the vendor's prepackaging, or the plastic wrap used by the chefs or kitchen workers to separate out slices of kosher food before the tray ends up on the serving line. Id.

Each kosher meal tray comes with a napkin. See id. ¶ 8. Prisoners bring their own spork to the chow hall. Id. ¶ 9; Decl. of Matthew Stefanczak (Feb. 21, 2024) ¶ 7 (Doc. No. 64-1).

II. Procedural History

Martinko filed this lawsuit asserting claims under RLUIPA and the First Amendment, challenging the religious "no-pork" diet he was then receiving as violating his religious rights, before he switched to the kosher diet. This court denied

4

Martinko's (first) motion for a preliminary injunction without prejudice, based on the availability of a kosher diet. See Martinko v. N.H. Dep't of Corr., No. 22-cv-238-LM, 2023 U.S. Dist. LEXIS 55125, at *12 (D.N.H. Mar. 10, 2023) (Doc. No. 34) (kosher diet served in NHSP chow hall satisfied all requirements of Martinko's religious "no-pork" diet and addressed his concerns about pork cross-contamination), R&R adopted, 2023 U.S. Dist. LEXIS 53459 (D.N.H. Mar. 29, 2023) (Doc. No. 36).

In June 2023, three months after he switched to the kosher diet, Martinko filed his Second PI Motion (Doc. No. 48). In that motion, Martinko claims that on May 6, 2023, he "noticed a cross-contamination issue" relating to the kosher meal trays, involving "inmate workers and chefs . . . contaminating his Kosher meals by handling pork foods and then handling his Kosher meals, trays, and cups without changing their gloves." Id. ¶ 5. He further asserts that he "witnessed additional [contaminations]" on May 10, May 13, May 17, June 3, and June 6, 2023. Id.

Defendants in objecting to the Second PI Motion have argued that the physical lay-out of the NHSP kitchen and chow hall make it unlikely that Martinko had a clear view of what happened on those specific dates, with respect to his own meal trays, a contention disputed by Martinko. Moreover, defendants have offered the declaration of NHDOC Director of Administration John

5

Hanson, whose responsibilities include the implementation of food service and hygiene policies, who asserts that workers in the NHSP kitchen "will" use utensils, not their gloved hands, to place food onto kosher meal trays.  Hanson Decl. II ¶ 5.

 An exhibit filed by Martinko offers a different picture of how food is actually handled and served in the NHSP kitchen. The sworn statement of Edgar Clifford Avery, a serving line worker assigned to the NHSP dinner shift, avers that "regularly," or on "a daily" basis, prisoners and staff in the kitchen's serving line handle chicken, hamburgers, "hot dogs, grilled bologna, fish, sausage patties, sausage links," bread, cake, brownies, cookies, and other unspecified "unpackaged" food items directly, with their gloved hands, almost never using utensils.  Decl. of Edgar Clifford Avery (July 8, 2023) ¶¶ 3-4 (Doc. No. 51, at 5-7).  Avery has seen (unnamed) serving line workers handle such food and then touch "packaged food items, trays, and cups without changing gloves"; and he offers as an example an occasion when he saw a person touch a no-fish tray after handling fish without changing gloves.  Id. ¶¶ 5-6.  With respect to kosher meals in particular, he has "regularly" witnessed kitchen workers in the serving line touch food without utensils and then handle "special diet trays (including Kosher trays) and cups without changing gloves."  Id. ¶ 9.

6

Martinko claims in his unsworn pleading Second PI Motion that "contaminates" on his meal's packaging, cups, and tray end up on his hands and are ingested. Second PI Motion ¶¶ 7-8. He moves for a preliminary injunction directing the defendants to provide him with a no-pork religious diet (comprised of NHSP canteen food) that he wants to be comparable in quality, nutrition, and variety to the regular meals and holiday meals served to the general prison population. See Doc. No. 48-2.

## Discussion

I. **Preliminary Injunction Standard**

Preliminary injunctive relief is an "extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8 (1st Cir. 2012) (internal quotation marks and citations omitted). The four-factor test for granting a preliminary injunction applies to plaintiff's Second PI Motion. See generally March 10, 2023 R&R (Doc. No. 34), 2023 U.S. Dist. LEXIS 55125, at *3-4 (movant must show likelihood of success on merits, irreparable harm absent an injunction, the balance of equities tipping in movant's favor, and the public interest favoring such relief (citing cases)).

The two factors in that test that weigh most heavily in the analysis are the likelihood of success on the merits and the need for an injunction to prevent irreparable harm, see id. (citing cases). "[P]roving likelihood of success on the merits

7

is the 'sine qua non' of a preliminary injunction. If the moving party cannot demonstrate that he is likely to succeed on his quest, the remaining factors become matters of idle curiosity." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2016) (citations, quotation marks, and original brackets omitted).

"[T]o demonstrate likelihood of success on the merits," the plaintiff "must show 'more than mere possibility' of success"; rather, he must establish a "'strong likelihood' that [he] will ultimately prevail." Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 10 (1st Cir. 2012) (citation omitted). The loss of religious freedoms guaranteed by RLUIPA or the First Amendment, standing alone, can be an irreparable harm. Franciscan All., Inc. v. Becerra, 47 F.4th 368, 380 (5th Cir. 2022); Harris v. Wall, 217 F. Supp. 3d 541, 560 (D.R.I. 2016); see also Ramirez v. Collier, 142 S. Ct. 1264, 1278 (2022) (capital defendant who could not engage in religious practice in execution chamber demonstrated irreparable harm).

## II. RLUIPA

RLUIPA provides that "[no] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a

8

compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). To obtain relief on his RLUIPA claims, this prisoner must show, at a minimum, that the prison has substantially burdened his ability to follow his religious diet. See March 10, 2023 R&R, 2023 U.S. Dist. LEXIS 55125, at *5 (citing cases).

A substantial burden on one's exercise of religion exists:

> "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs."

Perrier-Bilbo v. United States, 954 F.3d 413, 431 (1st Cir. 2020) (citation omitted). A policy "substantially burdens religious exercise under RLUIPA if it coerces the inmate to modify his religious behavior significantly or to violate his religious beliefs." Farrow v. Stanley, No. 02-567-PB, 2005 DNH 146, 2005 U.S. Dist. LEXIS 24374, at *14, 2005 WL 2671541, at *4 (D.N.H. Oct. 20, 2005).

The only potentially direct evidence of cross-contamination of Martinko's own "kosher meal" at any point in time consists of his own unsworn statements, describing events in May and June 2023. On May 6, 2023, Martinko says (in an unsworn pleading) that he saw NHSP chefs and kitchen workers handle pork products and then handle his own "kosher meal." He adds that he witnessed "additional [contaminations]" on five other occasions over the next four weeks.

9

Such specific events, even if taken as true, do not manifest that Martinko's religious diet has been substantially burdened. He has offered no evidence that skipping an occasional meal, or skipping part of a meal for fear of cross-contamination, puts any substantial burden on his religious practices. In the context of religious diets, courts have held that "allegations of isolated incidents or negligence, such as accidental cross-contamination of beans with pork as a result of carelessness or negligence by the inmate servers, does not establish a viable claim under RLUIPA because such incidents do not impose a 'substantial burden' upon an individual's religious beliefs." Miles v. Lumpkin, No. 6:20cv334, 2022 WL 3648183, at *1 (E.D. Tex. Aug. 24, 2022); see also Sprouse v. Ryan, 346 F. Supp. 3d 1347, 1359 (D. Ariz. 2017) (substantial burden not established by prisoner who "present[ed] no evidence that actual contamination has taken place," and no evidence that his fear of cross-contamination "affected his kosher dietary practice or caused him to modify his behavior in any way such that he must violate his religious beliefs"). Cf. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1325 (10th Cir. 2010) (Gorsuch, J. concurring) ("It's surely a burden to forgo an occasional meal. But it's not a substantial burden, and RLUIPA proscribes only government actions that substantially burden religious exercise." (emphasis in original)).

Nor is there sufficient evidence in the record before this court to allow the court to conclude that routine NHSP kitchen practices violate Martinko's religious diet. Each kosher entrée

10

comes in a sealed package, designed to keep it kosher in a non-kosher environment until the person receiving it opens it. There is no evidence that could give rise to any reasonable conclusion that substances on the serving line workers' gloves penetrate the seal and contaminate the entrée itself. The same may be said about the contents of all of the prepackaged or repackaged food on Martinko's kosher meal tray, to the extent that there is no evidence that kitchen workers' gloves touching the exterior surfaces of those items have cross-contaminated the food or liquids inside.

Even accepting as true the (disputed) evidence that people serving meals to prisoners in the chow hall regularly handle non-kosher foods without utensils and then touch the packaging of their kosher foods, cups, and trays with the same gloved hands, the evidence indicates that Martinko has access to his own utensil (a spork), a napkin, and wrapped or bagged kosher food served to him with his meals. He has not shown that he cannot use his own utensils, his napkin, and his food's wrappings (his plastic-wrapped sandwich, the bag, the peel of his banana, and the wrapper of his kosher snacks) to eat the contents of his meals without ingesting whatever is on the outside or whatever is on his own fingers.

Martinko states that pork contaminants on his tray, cups, or packaged food (left by the insufficiently changed gloves of

11

food service line workers) unavoidably end up on his hands as he handles his tray and cups and opens the packages holding his food. But apart from noting that he cannot leave to wash his hands once he is in the chow hall, he has not explained why he cannot avoid putting those contaminants into his food or in his mouth. He has presented no evidence as to why and how his spork's spoon end or tines, or the other side of a napkin or the inside of the paper bag, cannot be used to hold the food he eats to ameliorate the risk of cross-contamination. And he has not shown that he cannot eat prepackaged food by peeling back the wrapper and eating the exposed part without touching it. While such scrupulous consumptive practices may not be effortless, they are the same type of hygiene practices many employ when eating bananas, sandwiches, or snacks with packaging. Such practices, even if motivated by one's desire to practice kosher dietary restrictions in an institutional setting, cannot be said to substantially burden a religious diet in violation of RLUIPA. Cf. Farrow, 2005 DNH 146, 2005 U.S. Dist. LEXIS 24374, at *14, 2005 WL 2671541, at *4 (prison policy "substantially burdens" religious exercise under RLUIPA if it coerces inmate to modify his religious behavior significantly or to violate his religious belief).

Martinko has not made the requisite showing of a strong probability of prevailing on the merits of his RLUIPA claim, or

that he will suffer any other nonspeculative, irreparable harm in the absence of a preliminary injunction. Accordingly, the district judge should DENY plaintiff's motion for a preliminary injunction (Doc. No. 48), without prejudice.

### Conclusion

For the foregoing reasons, the district judge should deny the Second PI Motion (Doc. No. 48) without prejudice. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. The objection period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See [Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016)](). Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" [Id.]() (citations omitted).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 1, 2024

cc:   David M. Martinko, pro se
      Laura D. Devine, Esq.
      Brandon F. Chase, Esq.