UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

David M. Martinko

    v.                                                Civil No. 22-cv-238-LM-AJ
                                                         Opinion No. 2024 DNH 081 P

NH Department of Corrections, et al

## O R D E R

The court construes pro se plaintiff's, David M. Martinko, responsive filing (doc. no. 79) to the Report & Recommendation dated August 30, 2024 (doc. no. 75) to be an objection to that Report & Recommendation. See Fed. R. Civ. P. 72(b)(2). The Report & Recommendation ("R&R") recommends that the court grant defendants' motion for summary judgment (doc. no. 55). After due consideration of Martinko's objection to the R&R, the court approves the R&R in part and declines to approve it in part.

The court agrees with the R&R that Martinko has presented evidence from which a reasonable jury could find that Martinko's meals on the "no-pork" diet were "often, if not routinely, contaminated with pork products" as a result of routine prison practices (i.e., a "de facto policy" to ignore contamination) such that defendants are not entitled to summary judgment on the basis of the availability to Martinko of the no-pork diet. Doc. no. 75 at 17-18. The court also agrees with the R&R that defendants are entitled to summary judgment with respect to any claim for emotional distress damages for the reasons stated in the R&R. See id. at 23-25. However, the court disagrees that the availability to Martinko of the prison's

"kosher/halal" diet demonstrates as a matter of law that Martinko's religious practice has not been substantially burdened.

In reviewing a motion for summary judgment, the court is required to view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. See Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006). Defendants have presented sworn declarations from NHDOC employees discussing the manner in which meals for inmates requesting the kosher/halal diet are prepared. See doc. nos. 12-1, 29, 49-1. Defendants' evidence indicates that kosher/halal meals are prepared ahead of time on kosher-compliant surfaces and utensils using kosher-compliant foods. They are then placed on cafeteria-style trays and kept separate from other non-kosher foods in warming cabinets until an inmate approaches the meal service line and requests a kosher meal. At that time, the chef or a prisoner working in the kitchen retrieves the inmate's kosher meal from the warming cabinet and hands it to the inmate. According to defendants' declarations, the chef or prisoner retrieving the kosher meal does so while wearing plastic gloves, which have not come into contact with non-kosher foods because workers use serving utensils to serve meals to the general population.

Martinko has presented evidence tending to contradict the declarations. For example, Martinko has presented the sworn declaration of an inmate who worked in the prison's kitchen for many years. See doc. no. 51 at 5. The inmate avers that kitchen workers regularly handle unpackaged food items such as "hot dogs, grilled bologna, . . . sausage patties, [and] sausage links" with gloved hands "and utensils

2

are almost never used to serve these items." Id. The inmate also states that religious diets are not always prepared ahead of time, and in many cases, some or all of the foods comprising the religious meal are on the serving line next to the regular meal. When religious meals are prepared ahead of time, the inmate states that he "regularly observe[s]" workers handle food items without utensils and then retrieve "special diet trays (including kosher trays)" without changing their gloves. Id.

      Martinko switched from the no-pork diet to the kosher/halal diet in March 2023. Over the span of approximately a month (from May 6, 2023, through June 6, 2023), Martinko states that he witnessed six instances of workers handling his kosher meals, trays, and cups after handling foods containing pork and without changing their gloves. See doc. no. 48 at 2. In addition, Martinko states that there are no handwashing facilities in the prison's dining areas, and he is not permitted to leave the dining areas to wash his hands and then return. See doc. no. 65-1 at 1. Therefore, when a kitchen worker handles pork and then touches the packaging of Martinko's meal or his dining tray, Martinko is forced to touch the same contaminated surfaces to open his food or carry his tray and cannot wash his hands to remove any pork contaminant after doing so. Viewing the evidence in the light most favorable to Martinko and drawing all reasonable inferences in his favor, a reasonable jury could conclude that Martinko's kosher/halal meals are contaminated with pork products on a regular basis and that the prison has "a de facto policy of ignoring or deviating" from the food service policies described in

3

defendants' declarations. Mbonyunkiza v. Beasley, 956 F.3d 1048, 1054-55 (8th Cir. 2020) (affirming grant of summary judgment to defendants where plaintiff presented only isolated instances of contamination of halal foods resulting from negligent mistakes that were not pervasive enough to permit inference of de facto policy).

The R&R discounted Martinko's evidence. As for the inmate's declaration, the R&R concluded that it did not permit Martinko to withstand summary judgment because the declaration does not link the food service practices described therein to Martinko specifically, and because the inmate provided no evidence that pork ever comes into contact with food on kosher food trays. The court concludes that the R&R failed to construe the declaration in a light most favorable to Martinko.

Construed favorably, the declaration describes the manner in which foods comprising the kosher/halal diet at the prison are routinely served. It is reasonable to infer that the contamination of Martinko's kosher/halal meals (he describes experiencing) resulted from the routine practices discussed in the inmate's declaration. Moreover, the R&R's statement that the declaration provides no evidence that pork ever comes into contact with food on kosher/halal trays fails to view the declaration in a light favorable to Martinko. The declaration states that kitchen workers routinely handle food items such as hot dogs, bologna, and sausage with gloved hands "and then handle other food items." Id. In addition, because special diet meals are not always prepared ahead of time, foods comprising such meals "may be on the serving line next to the regular meal," and "utensils are

4

almost never used," it is reasonable to infer that the prison's routine practices result in workers handling food items for the kosher/halal diet while their hands are contaminated by food containing pork or other non-kosher food items.[1] Id.

Similarly, the R&R discounted Martinko's statements regarding the instances in which he observed his own kosher/halal meals being contaminated in part because he did not present facts establishing the frequency with which kitchen workers handle pork and then touch his tray, cup, or packaged entrée. Martinko asserts, however, that he observed six instances of contamination within a month and lists the dates on which he allegedly witnessed these instances. While Martinko's assertions are contained in a pleading rather than an affidavit, declaration, or other similar sworn statement, such a failing should be excused in light of Martinko's pro se status. See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (explaining that, while pro se litigants "are not exempt from procedural rules," courts "hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects").

---

[1] Even if one could not reasonably infer from the inmate's declaration that kitchen workers routinely handle kosher/halal food items after touching non-kosher foods, the R&R fails to give due weight to the fact that Martinko has presented evidence that contamination in violation of his religious beliefs occurs not only when pork comes into contact with his food, but also when pork comes into contact with a surface that touches his food. See doc. no. 53-1. The inmate's declaration states that he regularly observes kitchen workers using gloved hands to serve food containing pork and then use that same gloved hand to retrieve pre-assembled kosher/halal meal trays. Martinko has presented evidence that it is impossible for him to wash his hands after himself touching a contaminated tray or packaging. The R&R failed to construe this evidence in the light most favorable to him.

All told, viewing the evidence in the light most favorable to Martinko and construing all reasonable inferences in his favor, the availability to him of the kosher/halal diet does not entitle defendants to judgment as a matter of law on Martinko's RLUIPA or free exercise claims. Martinko has produced evidence from which a reasonable trier of fact could conclude that his kosher/halal meals are frequently contaminated by pork as a result of routine prison practices.

Because the R&R concluded that defendants were entitled to summary judgment on this basis, the R&R did not reach defendants' argument that Martinko's religious practice has not been substantially burdened because Martinko may purchase kosher food items from the prison canteen. The court concludes that defendants are not entitled to summary judgment on this basis.

Martinko has produced evidence that purchasing his meals through the canteen would be cost prohibitive. Martinko states he makes $15 a week working in the prison and identifies no other source of income or funds. Defendants do not contest Martinko's assertions. Even if Martinko spent the entirety of his limited income on purchasing kosher food items from the canteen (foregoing the purchase of toiletries, stationery, postage, or the like), but see Beerheide v. Suthers, 286 F.3d 1179, 1189 (10th Cir. 2002) (observing that "[f]orcing prisoners to decide between communicating with family and legal representatives, seeking medical treatment, and following religious tenets constitutes a Hobson's choice rather than a true alternative"), this would allow for a budget of $0.71 per meal. If the only option by which Martinko could receive a religious diet was to use the entirety of his meager

6

income on food from the canteen, Martinko would be forced to choose between receiving adequate nutrition from DOC-provided meals and violating his faith, or receiving inadequate nutrition from the canteen that does not violate his faith. A prisoner's religious practice is "substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." LeBaron v. Spencer, 527 Fed. App'x 25, 30 (1st Cir. 2013) (quotation omitted).

Defendants argue that a substantial burden does not exist when the state simply makes it more expensive to adhere to the dictates of one's faith. This argument misses the point. The issue here is not whether it would be more expensive for Martinko to purchase his food from the canteen than it would be to receive his meals free of charge from DOC—of course it would. The issue is that "any ability to purchase" kosher meals from the canteen "is chimerical [because] plaintiff is indigent." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1317 (10th Cir. 2010); see also Warren v. Wyant, 563 Fed. App'x 576, 577-78 (9th Cir. 2014) (reversing grant of summary judgment to defendant on RLUIPA claim where plaintiff "allege[d] in his amended complaint that he has no money to purchase a replacement copy of the [religious] book through the prison canteen" and genuine dispute remained on that issue); Tatum v. Meisner, No. 13-cv-44-wmc, 2016 WL 323682, at *7 (W.D. Wis. Jan. 26, 2016) (possibility that plaintiff could supplement his diet with food from canteen was "not established as a realistic option under RLUIPA" where prison did not offer "funding for purchases . . . for those who cannot otherwise afford it"); Muhammad v. Wheeler, 171 F. Supp. 3d 847, 855 (E.D. Ark.

7

2016) (denying summary judgment to defendants on RLUIPA claim in light of a "dispute over whether [plaintiff] has sufficient financial resources to purchase halal fish from the commissary"); Caruso v. Zenon, No. 95-MK-1578 (BNB), 2005 WL 5957978, at *12 (D. Colo. July 25, 2005) (availability of halal food from prison canteen "is not a sufficient alternative for an inmate of limited means"); cf. Beerheide, 286 F.3d at 1188 (expressing "serious concerns about the implications of expecting prisoners to fall into debt in order to maintain their religious beliefs"). Viewing the evidence in the light most favorable to Martinko and drawing all reasonable inferences in his favor, a reasonable jury could conclude that forcing Martinko to purchase his meals from the canteen places a substantial burden on his religious practice.

For these reasons, defendants have not demonstrated that they are entitled to judgment as a matter of law on plaintiff's RLUIPA or free exercise claims. However, defendants are entitled to judgment as a matter of law on the issue of emotional distress damages; such damages are not available to Martinko for the reasons stated in the R&R. Defendants' motion for summary judgment (doc. no. 55) is therefore granted in part and denied in part.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 24, 2024
cc: David Martinko, pro se
      Counsel of Record